## REEDER v. CARGILL.

### Opinion delivered March 4, 1912.

LIMITATION OF ACTIONS—SUSPENSION OF STATUTE BY DEBTOR'S IMPROPER ACT.—Under Kirby's Digest, section 5088, providing for a suspension of the statute of limitations during the time when the defendant "by absconding, concealing himself or any other improper act of his own," prevents the commencement of an action against him, *held* that where a debt was to become due upon the expiration of the debtor's term in the penitentiary and he escaped therefrom and was subsequently pardoned, his escape was an "improper act," and the statute of limitation did not run in his favor until the pardon was granted.

Appeal from Independence Circuit Court; *R. E. Jeffery,* Judge; reversed.

#### STATEMENT BY THE COURT.

This suit was instituted by appellant, Reeder, the surviving partner of the firm of Wright & Reeder. to recover the sum of $81 with interest, alleged to be due for services rendered by them as attorneys in defending the appellee, who was convicted in the Independence Circuit Court of the crime of grand larceny. He appealed, and the judgment of conviction was affirmed. The firm of which Wright was then a member, and of which Reeder afterwards became a member, represented him in both courts, and the testimony tends to prove that the fee for such services, including expenses, was $212, of which appellee had paid the sum of $131, leaving as a balance due the amount sued for.

The appellee denied that he owed the debt, and set up the statute of limitations.

The testimony on behalf of the appellants was sufficient to have sustained a finding in their favor; and the testimony on behalf of the appellee was sufficient to uphold a verdict in his favor. So the only question is as to whether or not the court properly instructed the jury.

Appellee was sentenced to the penitentiary, and was received by the keeper of the penitentiary on February 8, 1906, and the testimony tends to show that he escaped from the penitentiary on April 16, 1906. The keeper of the penitentiary testified that a reward of $25 was offered for the capture of appellee after he made his escape, which was sent out over the State to all sheriffs and other officers; that he had written, he supposed, two dozen letters to officers in the part of the State where appellee formerly resided, trying to effect his capture.

The sheriffs of Independence County at the time appellee was sent to the penitentiary and at the time of his escape testified that they received a letter from the keeper of the penitentiary inclosing a description of appellee, with the offer of the reward for his capture; that they made inquiries immediately upon receipt of the letter from the keeper of the State penitentiary, and got word in response that he was in Izard County. One of the sheriffs testified that "he had a fellow up there watching for him," and the other sheriff testified that he talked with the sheriff of Izard County and to another party who lived at Mudtown, a place near where appellee claims to have lived after he escaped from the penitentiary.

The appellee lived in Independence County when he was convicted and sent to the penitentiary. The sheriffs say that they made diligent inquiry for him; that they were making an effort to find him all the time after his escape. The proof shows that appellee was pardoned while at large on May 24, 1909.

Appellant testified that, after he received information of appellee's escape from the penitentiary, both he and his partner, Wright, who had since died, made repeated efforts to learn where appellee was and wrote several letters. They heard occasional rumors of his whereabouts. The letters addressed to him at such places would be returned, and further information would reveal that he was not there and had left

the country; that he was never able to get service on him until summons was served in this case.

Appellant further testified that his firm agreed with appellee, when he was about to be carried to the penitentiary, to let the balance that was due the firm run until appellee returned from the penitentiary; that the understanding was that when appellee came back from serving his sentence he was to pay the balance of the fee. Appellant testified that he thought the amount became due when appellee was pardoned; that he had been out of the penitentiary some time before that, but appellant Reeder was ignorant of his whereabouts; that he had made inquiries but could not find out from any source where the appellee was.

I. J. Matheny, who was a law partner of W. S. Wright in 1903 and 1904, testified "that there still remained due and unpaid on the fee $81; that he knew this because he saw Wright and Cargill settle just before Cargill left for the penitentiary, and he admitted owing that amount, which was shown by the books to be due. The amount was to become due when Cargill was out of the penitentiary. He claimed that "he was hard up, and that his wife would need all he had, and Wright agreed to wait until he was out of the penitentiary."

Quite a number of witnesses testified on behalf of appellee to facts tending to show that, after appellee returned from the penitentiary, he lived openly and publicly at his old home place in Izard County, Arkansas; that he lived continuously there from April 16, 1906, the date of his escape, until the trial of the present case; that he was a stock man and farmer, frequently went to the postoffice, burials, church and other public places; that he made no effort to conceal himself, and that his presence in the community was generally known.

The court among others gave the following instructions:

"No. 5. If you find from the evidence that the defendant, after his leaving the penitentiary, lived openly and publicly in the neighborhood of his residence, then that would not be such a concealment required by law as would prevent the statute of limitations from running, and your verdict should be for the defendant, unless you further find that by some

other improper act of his own he prevented the commencement of this action.

"No. 6. Under the law of this State, service of summons in a civil action may be had by leaving a copy thereof at the usual place of abode of the defendant, with some person who is a member of his family over the age of fifteen years; and, before you can find for the plaintiffs, you must find that the plaintiffs were prevented from so beginning their cause of action by such service prior to three years before the institution of this suit, but the time the defendant was actually in the penitentiary would not be computed in that time.

"No. 8. If the plaintiffs, by the exercise of reasonable diligence, could have discovered the whereabouts of defendant, then they can not plead the suspension of the statute of limitations; and it is incumbent upon plaintiffs to show such diligence, unless you find that the debt was not to become due until defendant returned from the penitentiary."

The appellant requested the court to grant, among others, the following prayers for instructions, which the court refused.

"No. 4. You are instructed that the three years' statute of limitations on an open account does not begin to run until the accrual of the cause of action; and if you believe from the evidence in this case that the account of plaintiffs now sued on was not to be payable until the defendant should serve his time, or sentence, in the penitentiary, then under the evidence in this case the statute would not begin to run until the date he secured a pardon from said sentence, and the plaintiff would have three years from the date of said pardon to bring this action.

"No. 5. The only way a convict sentenced to the penitentiary can be served is by serving a summons and copy of the complaint upon the keeper of the penitentiary, which must be delivered to the convict served; and if you find that the defendant was a convict and escaped from the penitentiary, thereby preventing a copy of summons and complaint being delivered to him by said keeper, then this would be such an improper act of his own as would prevent the statute running while he was at large and unpardoned.

"No. 6. If you believe from a preponderance of the evidence that the contract between Wright and defendant was

that the debt sued on was not to become due until the defendant was returned from the penitentiary, and if you further find that defendant escaped and was not released, but was subsequently pardoned, then the statute would not begin to run until said pardon was granted."

*Samuel M. Casey* and *McCaleb & Reeder*, for appellant.
· *Oldfield & Cole,* for appellee.

WOOD, J., (after stating the facts). The testimony of appellant Reeder and of witness Matheny tends to prove that the alleged claim for which this suit was brought would not be due until the appellee had returned from the penitentiary after serving the term of his imprisonment. According to this testimony, appellee and Wright had in contemplation that appellee would serve his term in the penitentiary, and that the balance of the fee claimed by Wright would not be due until the year for which he was sentenced had expired, or at least until the time that he should legally serve under the sentence had expired. Reeder testified that they did not contract with reference to appellee making his escape.

We are of the opinion that, according to this testimony, the amount claimed was due at the expiration of the period for which appellee was sentenced to the penitentiary. But for the fact that appellee had made his escape from the penitentiary, this action could have been commenced against him at that time, and the statute of limitations, had he not made his escape, would have commenced to run at that time also.

But section 5088 of Kirby's Digest provides as follows:

"If any person, by leaving the county, absconding or concealing himself, or any other improper act of his own, prevent the commencement of any action in this act specified, such action may be commenced within the times respectively limited after the commencement of such action shall cease to be so prevented."

The escape of appellee from the penitentiary was an unlawful and improper act on his part, which, under the above statute, suspended the running of the statute of limitations from the time when the alleged debt was due until appellee was pardoned. The law in regard to service of summons upon convicts makes provision only for service upon convicts who

are imprisoned in the penitentiary. Kirby's Digest, § 6051. Therefore, one who occupied the status of an escaped convict, although he may have been living openly and publicly at the place where he resided before his sentence, can not set up that the statute of limitations was running during the time he was an escaped convict, nor can he complain of a lack of diligence in not serving him with summons in a civil action during such time. In contemplation of law, a convict who has escaped from the penitentiary during the period of such escape and before pardon has no usual place of abode where he may be served with process under the provisions of section 6042, subdivision 3, Kirby's Digest.

It will be observed from what we have said that the cause was tried upon a misconception of the law.

The instructions of the court were based upon this misconception of the law, and were therefore erroneous and prejudicial. Prayers for instructions 4, 5 and 6 on behalf of appellant, in the view we have expressed, were correct, and the court erred in not granting the same.

For the errors indicated the judgment is reversed and the cause remanded for a new trial.

McCULLOCH, C. J., (dissenting). The majority hold, as I understand from the opinion, that an escaped convict can not plead the statute of limitations for the reason that there is no statutory provision for service of process on him. I take issue on that proposition.

Section 6051 of Kirby's Digest reads as follows: "Where the defendant is a prisoner in the penitentiary a copy of the complaint must accompany the summons, and the service must be upon the keeper of the penitentiary, who shall deliver the copies of the complaint and summons to the defendant. And a copy of the summons must also be delivered to the wife of the prisoner, or, if he has no wife, left at the place where he resided or claimed to reside, prior to his confinement, with some person of the age of sixteen years."

Another provision of the statute is that service may be had "by leaving a copy of such summons at the usual place of abode of the defendant, with some person who is a member of his family over the age of sixteen years." Third subdivision of section 6042, Kirby's Digest.

Now, it is plain that the provisions of section 6051 are solely for the benefit of a convict while confined in the State penitentiary, and the statute requires, for his protection, that while he is confined in the penitentiary a copy of the complaint and summons must be served on the keeper for his use, and also that a copy must be delivered to his wife or other person over sixteen years of age at his former residence. If he is not confined in the penitentiary, but has voluntarily left it, the provisions of section 6051 do not apply, and other methods of service are sufficient, by delivering a copy to him in person or to a member of his family over sixteen years of age at his usual place of abode. It seems to me to be a peculiar state of the law that a convict is immune from process because he wrongfully leaves the place where the statute provides a method of service on him. If that method of service was exclusive, he could not, of course, be otherwise served, but I can not believe, from the language of the statute that it was so intended. As before stated, that method of service is provided for his protection, and he forfeits it by voluntarily leaving the place, and may be served by any other statutory method provided for other persons. Section 5088 only makes an exception to the operation of the statute of limitations against a person who by his wrongful act prevents the commencement of an action against him. It is not every wrongful act that operates to prevent the commencement of an action. Merely because a convict escapes from the penitentiary does not prevent the commencement of an action against him; and unless he absconds or conceals himself so that process can not be served in some of the statutory modes, the statute of limitations is not suspended. If he has a place of abode known to his creditor, and is to be found there, the statute of limitations continues to run in his favor. I fail to see how appellee's confinement in the penitentiary and his alleged escape therefrom has anything to do with the case except as bearing on the question of evasion of the service of process; and if he was living openly at his usual place of abode, and appellant knew it, or by the exercise of reasonable diligence could have known it, the statute of limitations was not suspended.

The question as to the alleged agreement for postponement of the maturity of the debt was properly submitted to the jury.

I fail to discover any reversible error in the record, and the judgment should therefore be affirmed.

Mr. Justice KIRBY concurs in this opinion.